UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THURMAN HOSLER,<br>　　　　Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, L.L.C.,<br>BANK OF AMERICA, N.A.,<br>　　　　Defendants. | )<br>)<br>)<br>)　Civil Action No.<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

COMES NOW Thurman Hosler and for his causes of action against Nationstar Mortgage, LLC and against Bank of America, N.A. states:

1.　The court has jurisdiction under 28 U.S.C. § 1331, 12 U.S.C. § 2605, 2614, under 15 USC § 1692k(d)

2.　Nationstar Mortgage LLC located at 8950 Cypress Waters Boulevard, Dallas, TX, 75063 may be served with process by service on Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614.

3.　On or about April 25, 2005, Thurman Hosler and his mother, Betty Hosler, entered into a note and mortgage with Wilmington Finance in the amount of $91,375.00 for the purchase of property commonly known as 6111 West 35th Court S., Wichita, KS 67215.

4.　Thurman Hosler resides in the home and has been making payments on the mortgage.

5.　In February 2010, Thurman Hosler had a cut back in the number of hours per week that he worked and was unable to make his mortgage payments for a period of time.

6.　The servicer of the loan in 2010 was Bank of America.

7.　A foreclosure was filed on or about May 27, 2010 by The Bank of New York Mellon Trust Company, National Association FKA The Bank of New York Trust Company, N.A.

as successor to JP Morgan Chase Bank, National Association, as Trustee for the MLMI Surf Trust Series 2005-BC4, case no 10 CV 2130 in the District Court of Sedgwick County, Kansas.

8. On or about August 10, 2010, The Bank of New York took a default judgment in the case.

9. An order of sale was issued on September 3, 2010.

10. The foreclosure sale was canceled on September 22, 2010.

11. Another order of sale was issued on September 30, 2010.

12. The sale was canceled again on October 13, 2010.

13. Another order of sale was issued on September 7, 2011.

14. The sale was canceled on or about October 5, 2011.

15. Another order of sale was issued on October 25, 2011.

16. On or about November 16, 2011, the sale was canceled yet again.

17. On or about December 7, 2011, another order of sale was issued.

18. On or about December 28, 2011, the sale was canceled again.

19. On or about January 18, 2012, an order was entered setting aside the judgment and dismissing the case without prejudice.

20. Hosler has been allowed to resume payments to the servicer. At first, he made payments to Bank of America.

21. The servicing rights were then transferred to Select Portfolio Servicing, Inc.

22. Hosler made payments to SPS for a period of time and made an application for a loan modification.

23. SPS offered Hosler a loan modification.

24. Before Hosler could act on the loan modification proposal, the loan servicing rights were transferred to Nationstar.

25. Hosler has continued to make monthly payments to Nationstar since the date of the transfer.

26. Nationstar also offered a loan modification to Hosler. The terms of this loan modification were as follows:

    a. The past due amount was capitalized into the principal balance.

    b. The interest rate was lowered to 2%.

    c. A noninterest bearing deferred principal balance of $55,804.85 was added to the loan and a balloon addendum provided for payment in full of the loan balance at the maturity date.

27. Hosler sent his first qualified written request for information to Nationstar on or about May 27, 2014.

28. Hosler asked the following questions in his request for information:

    a. The statement of April 24, 2014, showed a loan balance of $82,883.78. The statement of April 14, 2014 showed a principal balance of $86,575.37. Hosler requested an explanation of the discrepancy.

    b. Hosler asked for clarification on the proposed loan modification. In that respect, he asked for the following information: An itemized breakdown of the amounts to be included in the capitalized amount and the amount of the principal balance; An explanation of the deferred principal balance of $55,804.85 if the past due amount was capitalized into the new principal balance and then amortized in full over the duration of the loan; An explanation of the balloon addendum and for a life of loan history so Hosler could determine if he was receiving credit for all payments.

29. Hosler indicated his interest in the loan modification and further advised Nationstar he would have some down payment money to facilitate the modification when the numbers were correct.

30. On or about June 23, 2014, Nationstar responded to the qualified written request in the following manner: Nationstar failed to explain the discrepancy between the statement of April 14, 2014 and the statement of April 24, 2014; Nationstar failed to provide a breakdown of the amounts to be included in the capitalized amount; and Nationstar failed to explain why there was such a substantial deferred principal balance nor was a life of loan history was not provided although a payment history for the time Nationstar had the loan was provided.

31. On or about July 24, 2014, Hosler sent another qualified written request seeking the missing information.

32. Again he asked for the life of loan transactional history.

33. Again he asked for an explanation of the balloon payment and the substantial deferred principal balance stating that if the past due amount was capitalized into the new principal balance and amortized over 21 years with an interest rate of 2%, the loan was paid in full without the huge deferred balance.

34. There was no response to this second letter.

35. Throughout this period of time Thurman Hosler has been making payments on the loan and continues to make payments on the loan.

36. Recently Nationstar has begun refusing payments.

37. On or about August 6, 2014, Nationstar sent Thurman Hosler a letter advising him that HAMP Tier I and II were not available to him and that he had declined the standard modification because he had not returned the final modification agreement.

38. On or about August 29, 2014, Nationstar sent Hosler an acceleration letter.

39. On or about July 25, 2014, Hosler sent Nationstar a third qualified written request complaining about the monthly property inspections. Hosler advised Nationstar that the home was occupied, Hosler was making his loan payments and he was trying to work

something out with Nationstar.

40. Nationstar responded to this letter on August 14, 2014, stating that Nationstar was entitled to make property inspections whenever the account was delinquent and they would not stop the property inspections.

## CAUSES OF ACTION AGAINST NATIONSTAR
## COUNT I—RESPA

41. Nationstar is a mortgage servicer and the loan is a federally related mortgage loan.

42. Hosler through his attorney has delivered a series of three qualified written requests to Nationstar.

43. Nationstar failed to conduct an investigation and failed to explain or correct the issues addressed by Hosler.

44. As a result of those failures, Hosler has suffered damages in worry and emotional distress as a result of his inability to resolve his delinquency and his inability to access affordable home loan modifications, has lost time from work and has not been given an accurate accounting.

WHEREFORE Hosler prays for damages in excess of $75,000.00, for his attorneys fees and expenses, for an accurate accounting and for such other and further relief as the court deems just and equitable.

## COUNT II—FAIR DEBT COLLECTIONS PRACTICES ACT

45. Nationstar is a debt collector.

46. Thurman Hosler is a consumer.

47. Nationstar misrepresented the amount of the debt.

48. Nationstar is seeking to collect an amount not authorized by the agreement or by loss mitigation rules.

49. Nationstar is threatening foreclosure in an effort to collect a debt.

50. As a result, Hosler has suffered damages due to the worry and emotional distress as a result of his inability to resolve his delinquency, his inability to access affordable home loan modifications, has lost time from work and has not been given an accurate accounting.

WHEREFORE Hosler prays for damages in excess of $75,000.00 for his attorneys fees and expenses, for an accounting on the amount due and for such other and further relief as the court deems just and equitable.

### COUNT III—Kansas Consumer Protection Act.

51. Thurman Hosler is a consumer as defined under the Kansas Consumer Protection Act.

52. Nationstar and its predecessors provided mortgage servicing for the note and mortgage in question.

53. Nationstar misrepresented the balance due on the mortgage. At a minimum, Nationstar did not have sufficient records to support the claimed balance due and the balance due may be false and misleading.

54. Hosler has no other choice than to rely on the representations of Nationstar with respect to the balance due.

55. The representations and actions by Nationstar constitute unfair and deceptive practices.

WHEREFORE plaintiff prays for damages in the amount of $75,000.00, for their attorneys' fees and for such other and further relief as the court deems just and equitable.

### BANK OF AMERICA, N.A.

56. Bank of America, N.A. was a prior servicer of the Hosler mortgage.

57. Bank of America is a Delaware corporation and national banking association

with its principal place of business in Charlotte, North Carolina.

58. Bank of America may be served by service on The Corporation Company, Inc., 112 SW Seventh Street, Suite 3C, Topeka, KS 66602.

59. Bank of America, N.A. was the servicer of the loan at the time of the foreclosure in Sedgwick County District Court.

60. On or about March 6, 2012, Bank of America, N.A. caused force placed insurance to be issued against the Hosler home through Balboa Insurance Company now owned by QBE.

61. The charge for that insurance was assessed to the loan balance in an amount to be ascertained.

62. If force placed insurance was justified, the price for the policy needed to be commercially reasonable.

63. By the time of the force placed insurance, Hosler had resumed payments to Bank of America.

64. Hosler had reason to believe that the resumed payments would cover his insurance and taxes as well as principal and interest on his mortgage.

65. Bank of America imposed force placed insurance in spite of the resumption of payments and failed and refused to refund any premium paid to Hosler after the effective date of the consent judgment.

66. In August, 2014, Hosler received a notice of a class action settlement in *Hall v. Bank of America, N.A.*, case no. 12 CV 22700, in the United States District Court for the Southern District of Florida.

67. The members of the class were those homeowners charged by Bank of America or Countrywide Home Loans for a lender-placed hazard insurance policy issued between January 1, 2008 and February 3, 2014 for residential property.

68. According to the notice, a lender placed policy was applied to Hosler's property on March 6, 2012 when Bank of America, N.A., was the servicer of the loan.

69. On or about August 13, 2014, Hosler by letter sent to the Settlement Administrator opted out of the class action settlement.

## CAUSES OF ACTION AGAINST BANK OF AMERICA, NA
## VIOLATION OF RESPA

70. In United States of America v. Bank of America Corp., case 12 CV 00361, in the United States District Court for the District of Columbia, Bank of America was subject to a consent decree as of April 4, 2012 which required Bank of America to attempt to maintain the current existing escrow account.

71. Further in the event force placed insurance was required, Bank of America was required to provide such insurance at a commercially reasonable price.

72. Bank of America should have restored the escrow account for Hosler and should have refunded any excessive insurance premium.

73. Upon information and belief, Bank of America has failed to do so.

74. Under 12 USC 2605(m), all charges for force-placed insurance must be bona fide and reasonable.

75. Upon information and belief, any charge imposed was not bona fide and reasonable.

WHEREFORE Hosler prays that the excessive premium be refunded or credited to his balance, for attorney fees and for such other and further relief as the court deems just and equitable.

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

76. Every contract implies a covenant of good faith and fair dealing. Each party must act in good faith and fair dealing in performance under the contract.

77. When an agreement gives one party discretionary decision making power, that party must act in good faith and in accordance with reasonable expectations of the other party.

78. Bank of America breached the implied covenant of good faith and fair dealing by:

    a. artificially inflating premiums to include kickbacks to Bank of America affiliates and to issue insurance coverage not necessary to cover Bank of America's risk;

    b. and otherwise disproportionately benefiting from the force placed insurance.

WHEREFORE Hosler seeks a refund for or to set aside the force placed insurance premiums and for such other and further relief as the court deems just and equitable.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

79. The transaction between Hosler and Bank of America is subject to the Truth in Lending Act.

80. Bank of America was required to accurately and fully disclose the terms of the legal obligations between Hosler and Bank of America.

81. Bank of America violated TILA, specifically 12 CFR 226.17(c) when it added force placed insurance to Hosler's mortgage obligations and failed to provide new disclosures; failed to disclose the amount and nature of any kickback, reinsurance or other profiteering involving Bank of America or their affiliates based on the purchase of force-placed insurance.

82. By force placing insurance, Bank of America increased the principal amount due under the mortgage and create a new debt obligation subject to disclosures under TILA.

83. Bank of America failed to disclose commissions or unearned profits paid to any

affiliate.

84. Acts constituting violations of TILA are subject to equitable tolling because Bank of America's kickback or other revenue-generating scheme was concealed from Hosler.

WHEREFORE Hosler prays for actual damages, for attorney's fees and for such other and further relief as the court deems just and equitable.

## JURY TRIAL

Hosler requests a jury trial for all issues triable in Wichita, Kansas.

BRUCE, BRUCE & LEHMAN, L.L.C.

By *s/ Elizabeth A. Carson*
ELIZABETH A. CARSON, #11356
P.O. Box 75037
Wichita, KS 67275-5037
Telephone: (316) 264-8000
Facsimile: (316) 267-4488
LCarson@KsAdvocates.com
Attorney for Plaintiff